IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

**MICHAEL PRETE,** *Petitioner*

**VS.** Case No.______________

**PETER NERONHA, in his official capacity as Attorney General of the State of Rhode Island,** *Respondent*

**EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

After the Smithfield, RI Police Department's ("SPD") knowingly illegal arrest, illegal searches, sexual assaults, concealment of exculpatory evidence (to date), falsification of several documents, destruction of exculpatory evidence (documented), etc., etc., among other things, **RI COMMITTED FEDERAL FELONY CRIMES (FORGED DOCUMENTS (PROVEN VIA, EXAMPLE, U.S. SECRET SERVICE ("USSS"), ETC.)), ETC. TO DESTROY, ETC. PETITIONER.** *See* herein for more as well as copies of RI's forgeries and USSS proof (including publicly available proof) demonstrating RI's forgeries.

**Since 10/19/23, ALL JUDGES (OF EVERY APPLICABLE RI JUDICIARY ("RIJ") LEVEL) HAVE KNOWINGLY LIED, FALSIFIED, ETC. (ALL DOCUMENTED), BEEN FULLY AWARE THROUGHOUT THIS PROCESS OF PROSECUTION'S CRIMINALLY FORGED DOCUMENT (WITHOUT WHICH, PROSECUTION WOULD HAVE NO CASE), ETC. YET HAVE, AMONG OTHER THINGS, DESPITE PETITIONER'S REPEATED EFFORTS, AIDED AND ABETTED PROSECUTION'S FRAUD, ETC.**

As briefly demonstrated herein, Petitioner has exhausted State court remedies.

Not only does RIJ repeatedly and intentionally violate bedrock rules, Constitutional guarantees, laws, etc. (documented), **RIJ, etc. repeatedly demonstrates that UNDER NO CIRCUMSTANCES WILL THEY ALLOW, among other things, PETITIONER TO BE EXONERATED AND FREED FROM THEIR CLUTCHES.**

On 6/24/25, RI's Chief Disciplinary Counsel ("RICDC") Kerry Reilley Travers even signed a letter euphorically admitting such.

Despite Travers's (at least 34-year veteran of RI's Disciplinary Counsel's Office and at least 4-year RICDC) 6/24/25 signed letter acknowledging her duty to investigate, admitting having been under such duty for AT LEAST A YEAR (**Travers's letter even suggests her duty likely began OVER TWO YEARS ago**), despite Petitioner providing Travers with things like USSS FOIAs (conclusively demonstrating Petitioner committed NO CRIME), etc., Travers's 6/24/25 signed letter specifically stated "…the disciplinary investigation will be **HELD OPEN** until [RIJ has finished Petitioner]." (Emphasis Added).

As Travers is aware, Disciplinary Rules specifically forbid such action (*see* R.I.Sup.Ct.Art.III, Rule 9). Despite Petitioner reminding Travers of such prohibition, Travers's Rule 9 obligation to "prompt[ly]" conclude her investigation, etc. and Petitioner cc'ing RI's Disciplinary Board and RISC's justices, Travers continues "h[o]ld[ing] open" the investigation.

Travers's investigation (which consists of simply going to USSS'S website (https://www.secretservice.gov/sites/default/files/reports/2025-01/FOIA-Log-FY-2023.pdf) and downloading third-party U.S. Government firsthand official evidence (demonstrating Petitioner's completely innocent, etc.)) would exonerate Petitioner of all allegations, result in immediate closure of the criminal case against Petitioner, result in immediate reinstatement of Petitioner's bar, those involved (Prosecution, etc., etc., etc.) charged with federal felony crimes, etc., etc., etc.

Per evidence obtained by Petitioner, instead of Travers conducting her SIMPLE, RISC ORDERED investigation, Travers (the RI Government), etc. **CROSSED STATE LINES, RECRUITED THE MASSACHUSETTS GOVERNMENT, ETC. TO RETALIATE AGAINST PETITIONER FOR PETITIONER EXPOSING (WITH DOCUMENTED EVIDENCE) FEDERAL FELONY CRIMES, ETC.**

Given the circumstances beyond Petitioner's control, Petitioner's discussions have been forced to be limited in scope, detail, etc. and this filing is effectively being submitted in emergency fashion.

**JURISDICTION AND VENUE**

This Court has jurisdiction under 28 U.S. Code §1651, §2241, §2242, and §2254.

Venue is proper in this District Court because the events giving rise to this Petition occurred and continue to occur in RI and Petitioner's detainment/restraint is occurring in RI.

## PARTIES

Petitioner is a Narragansett, Rhode Island resident of over 30 years, has no criminal record, has never been arrested, was (prior to the State's retaliation resulting from this case) a licensed attorney in Rhode Island and Massachusetts (both since 2016 and both with unblemished records), has multiple degrees, has multiple honors, etc., etc.

Respondent Peter Neronha is the Attorney General for Rhode Island who brought fraudulent charges against Petitioner. Respondent is sued in his official capacity.

## EXTREMELY BRIEF BACKGROUND

1. On 7/25/23, SPD Officer Brendan McDonald walked into Santander Bank and, despite no one from Santander having called SPD (as acknowledged in SPD's police report) and despite a Santander employee informing and making expressly clear to McDonald that there were no issues of any kind (as admitted in SPD's police report) and the employee's statements were made freely and without any duress, etc. (stated differently, no probable cause, etc.), as seen on Santander surveillance, McDonald began immediately instructing a still unidentified employee so SPD could arrest Petitioner.
2. Prior to 7/25/23, no member of SPD has ever met, interacted with, etc. Petitioner (or Petitioner's family) and SPD's at the other end of the State (Smithfield, RI) from where Petitioner lives (Narragansett, RI).
3. Petitioner has no criminal record, has never been arrested, etc.

4. Santander surveillance footage (Exhibit #12 to Prosecution's Information Charging Package) shows McDonald positioned himself in a corner area (for approximately 45 seconds (believing no surveillance would capture his actions)) writing on a piece of paper, went into a back area office, handed the paper (as seen on surveillance) to an unidentified female employee (whose identity is, to date, being concealed by Santander, SPD, Prosecution, etc. (in violation of Petitioner's Sixth Amendment) and who is NOT a confidential informant, etc.).
5. Six officers (including K-9 unit) (Lieutenant Gregg Catlow, Sergeant David Walsh, Investigator John Beausoleil, Michael McCoy, Gary McDole, Brendan McDonald (the arresting officer (who sexually assaulted Petitioner (fondling Petitioner's penis and testicles) approximately a dozen times and who, as later discovered, has a documented history of going after male genitalia (*See* e.g. *Heckmann v. McDonald*, et al, 1:2019-cv-00472)))) (REPRESENTING APPROXIMATELY HALF OF SPD'S ON-DUTY POLICE FORCE) swiftly swarmed the bank for what they knew, in advance, was only an alleged non-violent offense with only one individual involved.
6. As seen on Santander surveillance, a Santander employee had (voluntarily) provided Petitioner with photocopies of the front and back of both of Petitioner's bills.
7. As seen on Santander surveillance, SPD is seen confiscating Petitioner's photocopies and leaving Santander with them in-hand.
8. SPD later destroyed Petitioner's photocopies (as demonstrated by SPD's Seizure Report not listing the photocopies (but taking the time to inventory a Voided check from Petitioner's bank account), Petitioner's e-mail to SPD requesting return of his property (among which included the photocopies) and SPD Chief not acknowledging they even existed, etc.).

9. While everyone was still at Santander, **<u>the gold mark on both bills</u>** (from the pen detector test administered by the 43-year expert Santander employee (indicating the bills are authentic)) **<u>were still clearly visible therefore EACH OFFICER HAD PRIMA FACIE EVIDENCE THE BILLS TESTED GENUINE YET THEY STILL PROCEEDED WITH THEIR ILLEGAL ARREST.</u>**

10. SPD officers (including McDonald, a Lieutenant, Sergeant, Investigator, etc.) refused to hold the bills (the falsely alleged basis of the arrest) up to the light (among other things, they knew they were under surveillance cameras and they didn't want it on record that they knew the bills were GENUINE (as repeatedly confirmed (as shown on surveillance) by the 43-year expert Santander employee) (FURTHER PROVING THEY WERE FULLY AWARE OF THEIR ILLEGAL ARREST)).

11. **<u>McDonald acknowledged having no evidence a crime had been committed, SPD had no probable cause to arrest Petitioner, and SPD later was caught admitting the bills were GENUINE.</u>**

12. To, among other things, legitimize their illegal warrantless arrest, SPD instructed two Santander employees to, among other things, leave out exculpatory testimony including, but not limited to, the 43-year expert Santander employee inspecting and administering multiple authentication tests on both bills (watermark verification, security thread verification, etc.) (as shown on Santander surveillance footage) and each bill repeatedly testing GENUINE, Petitioner TWICE voluntarily handing his driver's license identification to Santander (once simultaneously with his cash deposit and another time to order more checks for his account), Petitioner's account was a 28-year-old account (which Santander had on file Petitioner's social security number, address, date of birth, personal e-mail address, etc.), etc.

13. SPD also effectively instructed Santander to destroy (and Santander has confirmed it did destroy) Santander's records of the serial numbers of Petitioner's bills, etc.
14. Despite the serial numbers to the bills being crystal clear, SPD's arrest report falsely declared the serial numbers to the bills "NOT AVAIL[ABLE]" (exact quote).
15. In accordance with RI Public Records Law, Petitioner requested documents, etc. from SPD regarding the illegal arrest.
16. On 8/1/23 at 3:10PM, in response to Petitioner's RI Public Records ("APRA") Request, other than a redacted portion of the arrest report and redacted portion of dispatch log, SPD Police Chief Richard St. Sauveur denied Petitioner to ALL other documents, etc. (including Petitioner's requested mug shot, list of SPD employees, etc.) claiming there was ongoing investigation.
17. As SPD's own records demonstrate, as of 8/1/23 at 3:10PM (a WEEK after Petitioner's arrest), SPD had NO ongoing investigation.
18. To legitimize Sauveur's claim of ongoing investigation, SPD Detective Lieutenant Douglas S. Cerce Jr. criminally forged (per USSS) a USSS "COUNTERFEIT SUBMISSION REPORT" (No Emphasis Added).
19. On 8/1/23 at **3:50PM**, SPD Detective Lieutenant Cerce Jr. entered into the record a signed statement claiming (in full):

> "A submission to the United States Secret Service US Dollars website was made for the 2 **SUSPECTED** counterfeit notes. Submission 111-2023-000321-W was made via the USSS portal." (Emphasis Added).

20. On 8/2/23 at 3:20PM, RI Assistant Attorney General Mark Benjamin e-mailed Petitioner declaring he'd been assigned (specifically by RI AG Peter Neronha) to Petitioner.
21. A letter dated 8/3/23 (titled AFFIDAVIT) (unsigned, unnotarized, etc.) allegedly from USSS is generated regarding "an investigation involving Detective Sergeant Joseph Marcello" (an officer who has been exposed for his ability and willingness to LIE, FALSIFY, COMMIT CRIMES, etc. (*see Ricci v. State of RI and Town of Smithfield*, et al (1:20-cv-00543-MSM-PAS) (a case in which the Town of Smithfield paid the victim to settle))) claiming the bills are allegedly counterfeit because the watermark portrait, security thread, etc. are incorrect (whereas Santander surveillance footage shows the State's own 43-year expert witness determined, at the time of the alleged incident and directly contradicting State's forged (counterfeited) letter, that the watermark portrait, security thread, etc. were CORRECT).
22. <u>**Attached (which were forged (counterfeited), etc. by RI) are:**</u>

-Prosecution's Exhibit #11 (attached labeled "Exhibit USDCRIHC1"): alleged USSS letter/"Affidavit" dated 8/3/23

-Prosecution's Exhibit #10 (attached labeled "Exhibit USDCRIHC2"): alleged "COUNTERFEIT SUBMISSION REPORT" (No Emphasis Added) dated 8/1/23 (and its instructions) by SPD Detective Lieutenant Douglas S. Cerce Jr.

-Prosecution's Exhibit #7 (attached labeled "Exhibit USDCRIHC3"): signed statement by Cerce Jr. entered on 8/1/23 at 3:50PM stating (in full):

> "A submission to the United States Secret Service US Dollars website was made for the 2 **SUSPECTED** counterfeit notes. Submission 111-2023-000321-W was made via the USSS portal." (Emphasis Added).

23. **USSS declared to Petitioner in, not one but, TWO separate letters (both sent via e-mail) for two separate FOIAs (#20230784 and #20230856) that USSS DOESN'T HAVE ANY RECORDS OF ANY KIND (E.G. SUBMISSION (e.g. 111-2023-000321-W), TESTS, LETTER, ETC.) OF, ABOUT, CONCERNING, ETC. THE BILLS, ETC.**

24. **Both Petitioner's FOIA Requests and USSS's "No Records" response ARE PUBLICLY AVAILABLE ON USSS'S WEBSITE (https://www.secretservice.gov/sites/default/files/reports/2025-01/FOIA-Log-FY-2023.pdf (*see* pgs.70, 78))** (*See* attached labeled "Exhibit USDCRIHC4" for relevant pages of USSS's Fiscal Year 2023 FOIA Log).

25. **Attached are:**

-USSS's first FOIA e-mail letter dated 8/24/23 (attached labeled "Exhibit USDCRIHC5") (regarding FOIA #20230784) (covering the period of 7/25/23-8/10/23 (as clarified by USSS FOIA Officer Kevin Tyrrell's e-mail dated 8/25/23 (attached labeled "Exhibit USDCRIHC6"))

-USSS's second FOIA e-mail letter dated 8/31/23 (attached labeled "Exhibit USDCRIHC7") (regarding FOIA #20230856) (covering the period of 8/1/23-8/25/23)

26. Both USSS FOIA e-mail letters definitively state:

"The Secret Service FOIA Office searched all Program Offices that were likely to contain potentially responsive records, and no records were located."

27. Given that USSS has no records of any kind of a letter/"Affidavit," a USSS portal submission, etc., per USSS, RI FORGED the alleged "Affidavit," USSS portal submission, etc. in order to bring its fraudulent, etc. prosecution against Petitioner.

28. **WITHOUT THE FORGED LETTER /"Affidavit" DATED 8/3/23, THE PROSECUTION HAS NO CASE.**

29. **Since 10/19/23, ALL JUDGES (OF EVERY APPLICABLE RIJ LEVEL) HAVE KNOWINGLY LIED, FALSIFIED, ETC. (ALL DOCUMENTED), BEEN FULLY AWARE THROUGHOUT THIS PROCESS OF PROSECUTION'S CRIMINALLY FORGED DOCUMENT (WITHOUT WHICH, PROSECUTION WOULD HAVE NO CASE), ETC. YET HAVE, AMONG OTHER THINGS, DESPITE PETITIONER'S REPEATED EFFORTS, AIDED AND ABETTED PROSECUTION'S FRAUD, ETC.**

30. On 9/11/23 at 9:17AM, Petitioner e-mailed AG Neronha (cc'ing Benjamin, etc.) noting the illegality of SPD's actions, the existence of exculpatory evidence (including describing and discussing the evidence), etc.

31. That same day, on 9/11/23, Benjamin sought out **SPD Captain Cory Carpenter to suborn perjury (see Prosecution's Information Charging Package Exhibit #1) in an attempt to, among other things, nullify Petitioner's e-mail.**

32. Petitioner's 9/11/23 e-mail also made an APRA request upon the RI AG's Office for documents, etc.

33. On 9/26/23, **when Petitioner attempted to follow-up on Petitioner's APRA request (since there was no response), PETITIONER DISCOVERED HIS E-MAIL ADDRESS WAS BLOCKED FROM E-MAILING THE ENTIRE AG'S OFFICE (including the Open Government Division).**

34. On 10/2/23 at 8:51AM, Petitioner e-mailed (using a different e-mail address) Neronha (cc'ing Benjamin, etc.) not only noting the blocking but, among other things, reminded not only that Petitioner's 9/11/23 e-mail was an APRA request (which the AG's Office was required under RI Law to comply with) but that Petitioner had a forthcoming APRA complaint (which are submitted to the RI AG's Office) regarding SPD's APRA denial.

35. That same day, on 10/2/23, despite Benjamin knowing he had no evidence of crime by Petitioner, Benjamin having exculpatory evidence demonstrating Petitioner is completely innocent, Benjamin knowing their star witness would provide exculpatory testimony on multiple critical elements of the alleged crime (testimony which Petitioner REMINDED Benjamin, etc. a MONTH before charges were brought), etc., Benjamin opened a prosecution against Petitioner (Providence Superior Court Case #P2-2023-3243A) falsely charging Petitioner with two counts of violating RIGL §11-17-3.

36. On 10/3/23, Benjamin filed as part of the Prosecution's case:

-the knowingly forged 8/3/23 Letter/"Affidavit"

-the knowingly forged "COUNTERFEIT SUBMISSION REPORT"

-the knowingly falsified Cerce Jr. signed statement

-ETC.

37. Benjamin opened his prosecution by simply filing documents (via an Information Charging Package ("ICP")) with the court (not via Grand Jury, etc. (where individuals would've been under oath, etc.)).

38. In violation of court rules, Benjamin never provided Petitioner with a copy of ICP.

39. On 10/19/23, Petitioner filed a Motion to Dismiss demonstrating, among other things, Benjamin's failure to present evidence demonstrating a crime was committed, the State's forgery, etc.

40. That same day, on 10/19/23, superior court clerk Stephen Burke e-mailed Petitioner stating he refused to schedule the motion to be heard.

41. Despite no such rule existing, Burke knowingly falsely claimed motions to dismiss could only be heard AFTER arraignment.

42. In fact, oppositely, the rules demonstrate motions to dismiss CAN be brought, heard, and decided upon before arraignment (*see* Super.R.Crim.P.9.1 and 12(b)(5)).

43. Petitioner's PRE-Arraignment Conference was 10/23/23 at 9:30AM.

44. RI AG employee Gregory Abilheira was supposed to appear on 10/23/23 (as routine) on behalf of the RI AG (as confirmed by court personnel, etc.).

45. However, Benjamin switched with Abilheira at the last minute, resulting in the clerk complaining that they had to change all their paperwork at the last minute.

46. **<u>Benjamin showed up to assure Petitioner was forced into the system WITHOUT DEALING WITH RI'S FORGED DOCUMENTS. He knew if the forgeries were addressed, the fraudulent case would be immediately dismissed.</u>**

47. Benjamin (who opened the knowingly fraudulent case against Petitioner) has been controlling people through the process (e.g. SPD Police Chief Sauveur (per a signed, sworn

affidavit) testifies that Benjamin (who is neither a member of the RI AG's Office's Open Government Division (which handles RI Public Record Law enforcement) nor SPD's/the Town of Smithfield's attorney) instructed SPD (via e-mail (thus there's evidence)) not to comply with RI Public Records Law (Benjamin had no authority to give such an order to SPD) and Sauveur testifies that he followed Benjamin's illegal instructions).

48. **<u>Suddenly the PRE-Arraignment Conference turned into an Arraignment.</u>**

49. Note, while reviewing the following, at the end of the arraignment, Benjamin stood up and euphorically, loudly stated: When is the Pre-Trial Conference (something he already knew, the date and time of the Pre-Trial Conference was already in the court docket, etc.). Benjamin's unnecessary comment was to not only let Petitioner know he successfully had Burke do what he wanted, the next judge (McBurney) would also do what he wanted (as demonstrated on 11/27/23 (see herein)), etc. but that **<u>the entire process is rigged (AS KEEPS BEING PROVEN (see herein for some examples))</u>**.

50. Super.R.Crim.P.10 requires the AG to automatically (without a Defendant needing to do anything) provide a Defendant with ICP prior to arraignment.

51. Despite Benjamin personally appearing at the arraignment representing the AG, Benjamin did not provide Petitioner with the ICP.

52. Even though court was scheduled to begin at 9:30AM, for reasons which were unclear to even court personnel (who were commenting what's taking so long), the judge (Special Magistrate Patrick Burke) only entered the courtroom at approximately 10:50AM.

53. Benjamin was seen repeatedly going in an and out of the back chamber areas (e.g. judge's chambers).

54. Further violating court rules, Special Magistrate Patrick Burke forced an arraignment without the AG having provided Petitioner with ICP, without asking the AG (in Petitioner's presence) if they'd provided Petitioner with ICP, without asking Petitioner if the AG provided Petitioner with ICP, without asking Petitioner if a PRE-Arraignment conference (the reason why Petitioner was there) had occurred, etc.

55. Simultaneously, however, Burke refused to allow Petitioner to proceed *pro se* unless Petitioner filed into the court record a form declaring Petitioner was representing himself as a lawyer (something NO pro se litigant is required to do to represent themselves).

56. **Despite Burke acknowledging Petitioner's Motion to Dismiss, Burke refused to address Petitioner's Motion** (nor even schedule Petitioner's EMERGENCY Motions to be heard). Instead, Burke only addressed Petitioner's arraignment.

57. Because Petitioner pursued the matter, Burke reluctantly scheduled Petitioner's motions to be heard (however, Burke scheduled the hearing to be approximately a MONTH later (stating it would be heard 11/15/23)).

58. Because Petitioner further pursued the matter (e.g. reminding Burke these were EMERGENCY Motions), Burke reluctantly scheduled Petitioner's motions to be heard on 10/25/23 (still not that same day (10/23/23)).

59. Despite Petitioner continuing to pursue the matter and despite Burke knowing Emergency Motions are heard same day, Burke refused to allow Petitioner's EMERGENCY Motion (Dated 10/19/23 (which was supposed to be heard on 10/19/23)) to be heard on 10/23/23 despite both Petitioner and Mark Benjamin (the specific individual from the AG who brought the fraudulent, etc. case against Petitioner and who has been aware of the facts since at least August 2023) being present (and it still being the morning), etc.

60. To silence Petitioner, **TO PREVENT PETITIONER'S MOTION TO DISMISS BEING DEALT WITH PRIOR TO ARRAIGNMENT (as permitted by court rules), etc., Burke, without Petitioner's consent, forced the entry** of a "not guilty" plea upon Petitioner **TO ENSURE PETITIONER WAS FORCED INTO THE SYSTEM**.

61. **Would RI's forged (counterfeited) USSS letter dated 8/3/23 (labeled Affidavit) been dealt with before the Arraignment (and Pre-Arraignment), THE PROSECUTION'S FRAUDULENT CASE WOULD'VE BEEN DISMISSED SINCE IT'S PRIMA FACIE FORGED** (setting aside USSS's own publicly available evidence demonstrating the 8/3/23 document is a forgery, it's unsigned, unnotarized, etc. (it's literally someone typed things onto a blank piece of paper, placed USSS's logo (publicly available and easily downloadable online) at the top, and pressed print (something ANYONE (in this case the State) could do on their computer)) (an Affidavit requires, among other things, a person to sign the document (physically (not auto-pen, etc.)) which is to be witnessed in front of a Notary Public who then, themselves, sign the same document, write their Commission number, write their Commission expiration date, stamp/imprint their seal, date the Notarization act, etc. (As was stated in Petitioner's Motion to Dismiss (10/19/23) (which Burke acknowledged receiving) "…all things required for an affidavit are missing…"))).

62. By forcing Petitioner into the system, they gave themselves ongoing opportunities against Petitioner (as they've repeatedly demonstrated (see herein for example)).

63. As demonstrated by the court documents, Burke had predetermined that post-arraignment bail would remain the same ($5,000 personal recognizance).

64. Because of Petitioner’s pursuit of having his Motion to Dismiss (addressing, among other things, the State’s forged documents) heard, Burke arbitrarily DOUBLED Petitioner’s bail to $10,000 personal recognizance (see attached labeled “Exhibit USDCRIHC8”).

65. A hearing for Petitioner’s Motion to Dismiss was scheduled for 10/25/23 and Prosecution was advised of the date.

66. Despite having notice of the upcoming hearing, nobody from the AG’s Office appeared (as reflected on the hearing transcript) to oppose Petitioner’s motion to dismiss nor did the AG’s Office submit anything to the court.

67. On 10/25/23, despite Magistrate John McBurney seeing that the AG’s Office didn’t oppose the motion, admitting on the record that he knew Petitioner did NOT abandon or in any way rescind, etc. his motion to dismiss, etc., McBurney made no decision on the motion and, instead, instructed the clerk to falsify the court record to reflect that Petitioner abandoned his motions.

68. Prosecution continued to not provide Petitioner with the ICP, etc.

69. On 11/13/23, Petitioner e-mailed SPD Chief Sauveur following up on Petitioner’s APRA Request (given that any alleged ongoing investigation(s) clearly concluded and therefore SPD had no justification to withhold documents, etc.) and reiterated Petitioner’s APRA Request.

70. Per a signed, sworn affidavit from Sauveur, Sauveur testifies that on 11/14/23 (the next day), **Benjamin instructed SPD (via e-mail (thus, there’s evidence)) not to comply with RI Public Records Law.**

71. Benjamin is neither a member of the RI AG's Office's Open Government Division (which handles RI Public Record Law enforcement) nor SPD's/the Town of Smithfield's attorney. In other words, Benjamin had no authority to give such an order to SPD.

72. On 11/27/23, Petitioner's Motion to Dismiss was again brought before McBurney. Petitioner also submitted a Motion to Strike (requesting the State's forged, etc. documents be stricken, etc.), Motion to Compel (requesting Prosecution be ordered to produce documents, etc. it was withholding (including Prosecution even admitting it was withholding the ICP's two CDs (one CD containing some Santander surveillance footage (Petitioner advised it contained exculpatory evidence (Petitioner gave examples of what exculpatory evidence would be contained therein))))), etc.

73. Despite McBurney acknowledging he was "…**REQUIRED to examine the information [charging package] AND THE ATTACHED EXHIBITS**…" (Emphasis Added) (exhibits which included the State's forged documents (Petitioner's Motions even addressed the State's forgery)), McBurney repeatedly refused to address and **pretended as if the forgeries didn't exist**.

74. Moreover, McBurney effectively admitted that SPD had not conducted any investigation into whether a crime had been committed.

75. Despite everything, McBurney denied all of Petitioner's motions (including claiming Prosecution did not need to produce and was under no obligation to produce the CDs nor any other exculpatory evidence in the State's possession).

76. McBurney however refused to document his decisions (since, to appeal, Petitioner needs the decisions documented).

77. Petitioner submitted Proposed Orders (simply documenting McBurney's denials) for McBurney to sign.
78. McBurney refused to sign the proposed orders nor issue his own orders.
79. On 12/17/23, in accordance with R.I.Sup.Ct.Art.IX (regarding Magistrate Appeals), Petitioner appealed McBurney's denials.
80. Despite R.I.Sup.Ct.Art.IX Rule 2 requiring Superior Court Magistrate Appeals be heard within 48 hours after appeal submission, Petitioner's appeal remained unaddressed for MONTHS.
81. On 5/6/24, Petitioner was informed his Magistrate appeal was dismissed because Petitioner was supposed to order a transcript.
82. There is no such requirement for Magistrate appeals.
83. Petitioner timely filed a Notice of Appeal to the RI Supreme Court ("RISC") on 5/28/24 appealing the false administrative dismissal of Petitioner's Superior Court Magistrate Appeal.
84. On 6/20/24, Petitioner submitted into the court record information continuing to demonstrate RI's forgery.
85. On 7/2/24, Petitioner's submitted into the court record stating, among other things:

> "…among other things, in forging (counterfeiting) such FEDERAL document, the State effectively impersonated a federal official (a federal felony offense, up to three (3) years in prison (18 U.S.C. 912)), used Federal seals, letterhead, etc. without authorization (a federal felony offense, up to five (5) years in prison (18 U.S.C. 1017, 18 U.S.C. 506)), etc." (No Emphasis Added).

86. Less than 24 hours later, at Petitioner's 7/3/24 Pre-Trial Conference (forced under threat of arrest), after superior court judge Linda Rekas Sloan tried (unsuccessfully) coercing Petitioner into making a plea deal (despite knowing, among other things, Petitioner's case was in the appellate process), **Prosecution** (making a surprise, court rule prohibited motion, etc.) **and Rekas Sloan** (who admittedly lacked jurisdiction, etc.) **initiated** (without evidence, in violation of RI Law, despite Petitioner's brief cross-examination of Prosecution uncovering Prosecution LIED, etc., etc.) **proceedings to, in violation of R.I.G.L. 40.1-5.3-3, bypass a trial on Prosecution's fraudulent criminal case and, instead, lock Petitioner up in a psych-ward for 13.33 years by falsely claiming they had "concerns" about Petitioner's mental state (see attached labeled "Exhibit USDCRIHC9").**

87. In addition to explicit retaliation (both Prosecution and Rekas Sloan specifically stated on the record that them seeking and ordering Petitioner to submit (against his will) to a psychological evaluation was in DIRECT RESPONSE to the contents of Petitioner's 7/2/24 court submission (in which Petitioner specifically identified some federal felony crimes committed by the State)), by Perrotta's and Rekas Sloan's own claims, they had alleged "concerns" about Petitioner's mental state BEFORE the 7/3/24 Pre-Trial Conference began yet **JUST BEFORE Perrotta and Rekas Sloan claimed Petitioner needed a psychological exam, Perrotta and Rekas Sloan were more than willing to accept and, in fact, WERE TRYING TO FORCE PETITIONER TO ACCEPT A PLEA DEAL** (effectively a binding contract (which under established case law, a mentally impaired individual cannot enter into)).

88. Despite Petitioner's requested appellate transcripts (from different court stenographers) being paid for and ready, the transcripts were being held back to, among other things, ensure Petitioner's transfer deadline to RISC would lapse (and his RISC appeal dismissed).
89. Even after Petitioner managed to have the transcripts docketed, the clerk's office (Stephen Burke) still did not transfer the file.
90. Clerk's office intentionally waited until a few HOURS (maximum three (3) business hours) AFTER the deadline lapsed to transfer the documents.
91. **HADN'T IT BEEN FOR PETITIONER'S ACTIONS, ETC. (TAKEN THE DAY BEFORE) TO PRESERVE THE TRANSFER DEADLINE, THE CLERK'S OFFICE'S DOCUMENTED ATTEMPTS WOULD HAVE SUCCEEDED.**
92. Though clerk's office ended up having to transfer documents, Petitioner discovered that two MONTHS later, **clerk's office went back and submitted KNOWINGLY FALSE INFORMATION INTO PETITIONER'S APPEAL RECORD in an effort to STILL attempt to sabotage Petitioner's appeal.**
93. On 8/23/24, Petitioner submitted requests for subpoenas for Defense Witnesses.
94. The subpoena requests are reviewed by McBurney.
95. To date, McBurney has refused to allow the motions to be heard (in other words, **DISALLOWING PETITIONER FROM SUBPOENAING DEFENSE WITNESSES**).
96. On 9/27/24, before Petitioner submitted his required RISC Prebrief Statements (which declares the bases of his appeals), Assistant RI AG Christopher Bush filed a motion to dismiss Petitioner RISC's appeal (Case #SU-2024-0235-CA) (see attached labeled "Exhibit USDCRIHC10").

97. Bush's motion was procedurally barred (as Bush admitted in other cases), failed to comply with service requirements, etc.

98. Bush's motion demanded, in violation of SCOTUS binding case law, RI Law, etc., that Petitioner's appeal must be dismissed because only claims of Double Jeopardy are permissible interlocutory appeals in criminal case matters (a statement **in complete contradiction of SCOTUS jurisprudence and ALL TWELVE FEDERAL CIRCUIT COURTS (including the First Circuit (with jurisdiction over RI))**).

99. On 12/16/24, Petitioner timely filed a Memorandum in Opposition to Bush's Motion to Dismiss.

100. Petitioner's Memorandum reminded RISC of RI Law, SCOTUS binding precedent (*Abney v. United States*, 431 U.S. 651 (1977) (which states ANYTHING is appealable as long as it fits within the collateral-order exception to the final-judgment rule (*see* also *U.S. v. Joseph*, 38 F.4th 218 (1st Cir. 2022)))), etc. (things RISC ALREADY KNEW) and advised Petitioner would appeal to SCOTUS if RISC defied SCOTUS precedent, etc. (see attached labeled "Exhibit USDCRIHC11").

101. On 12/23/24, Petitioner submitted his Prebrief Statement (which declares the bases of his appeal) for Case #SU-2024-0235-CA (Petitioner's appeal of the false administrative dismissal of his Superior Court Magistrate Appeal) (see attached labeled "Exhibit USDCRIHC12").

102. On 12/26/24, an unidentified RISC clerk improperly rejected Petitioner's court filing claiming Petitioner did not include certain documentation with his filing.

103. Page 1 of Petitioner's Prebrief Statement BEGINS by identifying the orders/judgments/etc. being appealed and to "see attached labeled 'Exhibit []'" for copies of such order/judgment/etc.

104. Petitioner requested RISC's clerk's office indicate who improperly rejected his filing.

105. Though Petitioner's filing was filed, no information was provided as to who improperly rejected the filing.

106. When Petitioner again requested to know who improperly rejected his filing, RISC's clerk's office had the court's Deputy General Counsel (Chrisanne Wyrzykowski) intervene to, among other things, knowingly falsely imply Petitioner was acting unethically/improperly, silence Petitioner, etc.

107. On 1/30/25, RISC's single Duty Judge granted Bush's motion to dismiss (see attached labeled "Exhibit USDCRIHC13").

108. On 2/10/25, Petitioner moved for reconsideration (by the full RISC court).

109. On 3/7/25, RISC denied Petitioner's motion for reconsideration in an unreasoned order (see attached labeled "Exhibit USDCRIHC14").

110. RISC's reconsideration/rehearing denial order also disallowed Petitioner from even being able to file a request for stay pending appeal to SCOTUS (which SCOTUS's rules explicitly state is a prerequisite before Petitioner is allowed to ask SCOTUS for a stay).

111. On 4/14/25, despite being advised (by Petitioner) of Petitioner's right to and Petitioner's intention to appeal to SCOTUS RISC's decision (in other words, being advised of the status of the case (the purported purpose of Pre-Trial Conferences)), Petitioner requesting postponement of the Pre-Trial Conference given Petitioner's appeals, etc., etc., superior court

judge David Cruise issued a bench warrant for Petitioner's arrest (see attached labeled "Exhibit USDCRIHC15") to, among other things, force Petitioner to plea or proceed to trial.

112. Despite Petitioner having appealed Cruise's bench warrant (Petitioner's appeal was docketed at RISC on 4/17/25 (see attached labeled "Exhibit USDCRIHC16")) and Cruise, per RISC rules, losing jurisdiction while RISC dealt with Petitioner's appeal, Cruise has refused, despite Petitioner's request, to even temporarily rescind his bench warrant.

113. On 5/8/25, Petitioner submitted a request to SCOTUS for an extension of time (which was granted (SCOTUS No. 24A1128)) to submit his Petition for Writ of Certiorari regarding RISC's 3/7/25 Order.

114. Petitioner submitted his Petition for Writ of Certiorari (8/3/25) (25-148).

115. On 8/25/25, Petitioner formally submitted (via e-mail) a complaint to the AG's Office's Open Government Division ("OGD") regarding SPD's APRA Denials.

116. On 9/9/25, when Petitioner attempted to respond to SPD's attorney's e-mail (about Petitioner's APRA complaint) to OGD, Petitioner discovered his e-mail address was blocked from e-mailing the entire AG's Office (including OGD) AND SPD's attorney.

117. To date, OGD hasn't issued a decision on Petitioner's APRA complaint.

118. Based on other OGD decisions, OGD should have already issued a decision AT LEAST A MONTH AND A HALF AGO.

119. On 10/6/25, SCOTUS declined to grant certiorari regarding RISC's 3/7/25 Order.

120. On 10/31/25, Petitioner submitted a SCOTUS Petition for Rehearing.

121. On 12/15/25, SCOTUS denied Petitioner's Rehearing Petition.

122. Petitioner incorporates by reference all documents contained in RI Superior Court #P2-2023-3243A and all related matters (e.g. RISC #SU-2025-0106-CA, RISC #SU-2024-0299-CA, RISC #SU-2024-0235-CA).

123. Exhibits attached hereto are (which Petitioner incorporates by reference in their entirety (which obviously includes all referenced documents, etc.)):

-USDCRIHC1-Prosecution's Exhibit #11 (8/3/23) (1 page)

-USDCRIHC2-Prosecution's Exhibit #10 (8/1/23) (2 pages)

-USDCRIHC3-Prosecution's Exhibit #7 (8/1/23) (1 page)

-USDCRIHC4-Pages 1, 70, and 78 of USSS's Fiscal Year 2023 FOIA Log (3 pages)

-USDCRIHC5-USSS's first FOIA e-mail letter to Appellant (8/24/23) (2 pages)

-USDCRIHC6-USSS FOIA Officer Kevin Tyrrell's e-mail to Appellant (8/25/23) (1 page)

-USDCRIHC7-USSS's second FOIA e-mail letter to Appellant (8/31/23) (2 pages)

-USDCRIHC8-R.I. Superior Court Bail and Recognizance Conditions (P2-2023-3243A) (10/23/23) (1 page)

-USDCRIHC9-R.I. Superior Court Order for Competency Examination (P2-2023-3243A) (7/3/24) (1 page)

-USDCRIHC10-Respondent's Memorandum of Law in Support of State's Motion to Dismiss (SU-2024-0235-CA) (9/27/24) (without its exhibits) (5 pages)

-USDCRIHC11-Petitioner's Memorandum in Opposition to Appellee's Motion to Dismiss (SU-2024-0235-CA) (12/16/24) (35 pages)

-USDCRIHC12-Petitioner's RISC Prebrief Statement (SU-2024-0235-CA) (12/23/24) (without its exhibits) (20 pages)

-USDCRIHC13-Order of R.I. Supreme Court (SU-2024-0235-CA) (1/30/25) (1 page)

-USDCRIHC14-Order of R.I. Supreme Court (SU-2024-0235-CA) (3/7/25) (1 page)

-USDCRIHC15-Cruise's Bench Order (P2-2023-3243A) (4/14/2025) (1 page)

-USDCRIHC16-RISC Notice of Docketed Appeal (SU-2025-0106-CA) (4/17/25) (2 pages)

## VIOLATIONS OF FIRST AMENDMENT RIGHT TO FREE SPEECH

Petitioner incorporates Paragraphs 1 through 123, as if fully set forth herein.

The First Amendment to the U.S. Constitution, as applied to the States via the Fourteenth Amendment, prevents Respondent from retaliating against Petitioner's Free Speech.

Respondent's actions, as set forth above, retaliate against Petitioner explicitly because of and based on Petitioner's Free Speech.

## VIOLATIONS OF FIFTH AMENDMENT RIGHT TO SUBSTANTIVE DUE PROCESS

Petitioner incorporates Paragraphs 1 through 123, as if fully set forth herein.

The substantive component of the Due Process Clause of the Fifth Amendment to the U.S. Constitution, as applied to the States via the Fourteenth Amendment, protects Petitioner's Liberty Interests. Petitioner has a substantive liberty interest in being free from detainment/restraint.

Respondent's actions, as set forth above, have infringed upon Petitioner's substantive liberty interest in being free from detainment/restraint.

**VIOLATIONS OF FIFTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS**

Petitioner incorporates Paragraphs 1 through 123, as if fully set forth herein.

The procedural component of the Due Process Clause of the Fifth Amendment to the U.S. Constitution, as applied to the States via the Fourteenth Amendment, prevents Respondent from depriving Petitioner of Liberty without procedural protections.

Respondent's actions, as set forth above, have deprived Petitioner of his freedom from detainment/restraint. Respondent brought a knowingly and intentionally fraudulent prosecution, submitted knowingly forged documents, committed federal felony crimes, knowingly and intentionally withheld (and continues to withhold) exculpatory evidence, illegally ordered police not to comply with RI Law, prevents Petitioner with the opportunity to present and confront evidence, neutral decision-makers, right of appeal, etc., etc., etc.

**RELIEF REQUESTED**

Petitioner requests this Court assume jurisdiction over this Petition and grant the following relief:

I. While this Petition is pending (and to allow Petitioner to fully and freely litigate his case), issue a Writ ordering the RI Superior Court to rescind and withdraw its bench warrant (which is among the issues involved in this Petition).

II. Issue a Writ of Habeas Corpus compelling Respondent to withdraw (with prejudice) its knowingly fraudulent Prosecution against Petitioner.

III. Declaration that Respondent has violated Petitioner's Constitutional rights.

IV. Issue a Writ ordering reinstatement of Petitioner's RI Law License.

V. Award Petitioner expenses and attorney's fees.

/s/ Michael Prete
Michael Prete
782 Boston Neck Road, Narragansett, RI 02882
December 19, 2025